IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE, M.D., JOHN DOE II, M.D., | ) | Case No. 15 CV 8527 |
| HEY YUAN, M.D., DIANA SCHWARZ, M.D., | ) | Hon. Judge Joan B. Gottschall |
| ROBERT DEVITO, M.D., ANDREA DOE, | ) | |
| JENNIFER ASHANTI, SARAH DOE, | ) | |
| SERGEANT JOHNSON, WEXFORD HEALTH | ) | |
| SOURCE INC., THE ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, AND | ) | |
| UNKNOWN EMPLOYEES OF THE ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS. | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, AARON MILLER, by and through his appointed counsel, Maureen A. McGuire of Anderson, Rasor & Partners, LLC, as his Second Amended Complaint against Defendants, JOHN DOE, M.D., JOHN DOE II, M.D., HEY YUAN, M.D., DIANA SCHWARZ, M.D., ROBERT DEVITO, M.D., ANDREA DOE, JENNIFER ASHANTI, SARAH DOE, SERGEANT JOHNSON, WEXFORD HEALTH SOURCES INC., THE ILLINOIS DEPARTMENT OF CORRECTIONS, AND UNKNOWN EMPLOYEES OF THE ILLINOIS DEPARTMENT OF CORRECTIONS states as follows:

**NATURE OF ACTION**

1. Mr. Aaron Miller was incarcerated at Stateville Correctional Center (hereinafter, "Stateville") from March 14, 2014, through December 22, 2014. Prior to his incarceration, Mr. Miller received multiple gunshot wounds, resulting in injuries to his chest,

right arm, and abdomen. The gunshot wounds left an opening in his abdominal wall which continued to leak fluids during his time at Stateville. Additionally, Mr. Miller suffers from right arm pain due to nerve damage for which he is prescribed medication. Mr. Miller also suffers from a seizure disorder and depression for which he requires medications. Finally, he requires wheelchair assistance to travel long distances. Mr. Miller files his action against Defendants seeking to recover compensatory and punitive damages, costs, attorney's fees, expenses, and any other relief that this Court deems proper due to Defendants (1) refusal to facilitate medically necessary abdominal surgeries; (2) refusal to change his abdominal wound dressing; (3) failure to provide required medication for his right arm nerve damage; (4) failure to provide him his prescribed medication for his depression; (5) failure to provide him his prescribed medication for his seizure disorder; and (6) failure to provide him necessary access to his wheelchair. Defendants, all acting under color of state law, showed deliberate indifference to Mr. Miller's injuries, prolonging his pain and suffering and exacerbating his physical injuries, all in violation of the 8th Amendment of the United States Constitution, the American with Disabilities Act, 42 U.S.C. §12132; the Rehabilitation Act, 29 U.S.C. 794(a), and 42 U.S.C §1983.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this case under 28 U.S.C. §1343 and §1331, as Plaintiff's claims arise under 42 U.S.C. §1983, the Americans with Disabilities Act and the Rehabilitation Act.

3. Venue is proper, pursuant to 28 U.S. C. §1391 in this Court because the events given rise to took place at Stateville, in Crest Hill, Illinois.

## **PARTIES**

4. Plaintiff, AARON MILLER, was an individual who was incarcerated at Stateville from March 14, 2014, through December 22, 2014, after being sentenced to 13 years in prison.

5. Defendant, JOHN DOE, M.D. was a correctional facility physician during all relevant times. He is believed to be employed by Wexford Health Source. He is named in his individual capacity.

6. Defendant, JOHN DOE II, M.D., was a correctional facility physician during all relevant times. He is believed to be employed by Wexford Health Source. He is named in his individual capacity.

7. Defendant, HEY YUAN, M.D., was a correctional facility psychologist during all relevant times. He is believed to be employed by Wexford Health Source. He is named in his individual capacity.

8. Defendant, ROBERT DEVITO, M.D., was a correctional facility physician during all relevant times. He is believed to be employed by Wexford Health Source. He is named in his individual capacity.

9. Defendant, DIANA SCHWARZ, M.D., was a correctional facility physician during all relevant times. She is believed to be employed by Wexford Health Source. She is named in her individual capacity.

10. Defendant, ANDREA DOE, was a correctional facility med-tech nurse during all relevant times. She is believed to be employed by Wexford Health Source. She is named in her individual capacity.

11. Defendant, JENNIFER ASHANTI, was a correctional facility nurse during all relevant times. She is believed to be employed by Wexford Health Source. She is named in her individual capacity.

12. Defendant, SARAH DOE, was a correctional facility med-tech nurse during all relevant times. She is believed to be employed by Wexford Health Source. She is named in her individual capacity.

13. Defendant, SERGEANT JOHNSON, was a Correctional Officer at Stateville. He is named in his individual capacity.

14. Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, ("the Department") operates Stateville and is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees for injury occasioned thereby.

15. Defendant ,WEXFORD HEALTH SOURCES, INC. ("Wexford") is (upon information and belief) a corporation formed and operating under the laws of the State of Florida, with its principle place of business located in Pittsburg, Pennsylvania. At all relevant times, Wexford had a contract with the Illinois Department of Corrections to provide medical care to all prisoners housed in Illinois' prisons.

**FACTUAL BACKGROUND**

16. Several years prior to his incarceration at Stateville, Mr. Miller was shot six times in his abdomen, chest, and right arm. As a result, he still has bullets lodged in his abdomen and chest, and suffers from nerve damage in his right arm.

17. Mr. Miller had an abdominal surgery performed in June of 2011, during which a gastronomy tube (hereinafter referred to as "g-tube") was inserted.

18. In March of 2013, Mr. Miller's g-tube was dislodged due to a fall, and was never reinserted.

19. As a result of the 2013 g-tube dislodgement, Mr. Miller continued to suffer from a seeping abdominal wound during his incarceration at Stateville and multiple physicians had ordered that Miller receive daily dressing changes to his abdominal wounds. Additionally, Mr. Miller had an enlarged hernia and a percutaneous fistula which were determined to require surgical intervention during his time at Stateville.

20. His stomach muscles were detached as a result of his earlier abdominal surgery which was also determined to require surgical intervention during his time at Stateville.

21. Mr. Miller utilized the proper procedures at Stateville to seek surgical intervention for his abdominal injuries.

22. Mr. Miller sought treatment from Dr.'s Doe, Doe II, Devito, and Schwarz at Stateville concerning the surgical intervention necessary for his abdominal injuries.

23. Dr.'s Doe, Doe II, Devito, and Schwarz refused to facilitate or arrange (or in the alternative Wexford refused to approve) the medically necessary abdominal repair surgeries that Mr. Miller required.

24. Subsequently, Mr. Miller filed grievances seeking proper medical care and treatment, including but not limited to, having his fistula fixed and his hernia repaired. The grievances were denied by prison officials.

25. During this time, Mr. Miller had no way to treat his abdominal injuries because he was denied surgery. Mr. Miller was entirely dependent on Wexford and Dr.'s Doe, Doe II, Devito, and Schwarz to authorize surgical intervention.

26. Mr. Miller utilized the proper procedures at Stateville to seek wound dressing changes for his seeping abdominal wound.

27. Beginning on September 3, 2014, Dr. Doe and Nurse Andrea Doe refused to comply with the order to change Miller's dressings daily, and instead changed his dressing weekly.

28. Throughout Mr. Miller's stay from March 14, 2014, through December 22, 2014, at Stateville, Dr. Devito, Sergeant Johnson and Nurse Jennifer Ashanti also refused to change his dressings daily.

29. During these months, Mr. Miller had no way to treat his open abdominal wound because he did not have access to gauze or dressing changes. Rather, Mr. Miller was entirely dependent Dr. Devito, Dr. Doe, Nurse Jennifer Ashanti, Sergeant Johnson, and Nurse Andrea Doe to change his dressing.

30. As a result of Mr. Miller's untreated abdominal wound, Mr. Miller's began to suffer from rashes, sores, infections, and severe chronic pain associated with his abdominal wound.

31. Subsequently, Mr. Miller filed six grievances complaining of the Defendants failure to initiate dressing changes. All six grievances were denied by prison officials.

32. Mr. Miller also suffered from nerve damage to his right arm, epilepsy, and depression all of which required him to take specific medications daily through his incarceration at Stateville.

33. In March of 2013, Mr. Miller was prescribed Dilantin to treat his epilepsy. He utilized the proper procedures at Stateville to obtain treatment for his epilepsy.

34. During his incarceration at Stateville, Nurse Andrea Doe and Nurse Sarah Doe repeatedly refused to administer Mr. Miller his previously prescribed Dilantin. As such, Mr. Miller had no way to treat his epilepsy because he was denied his medication.

35. After Mr. Miller's Dilantin was discontinued he began suffering from numerous seizures which continued throughout his stay at Stateville.

36. Further, Mr. Miller suffered from depression and was prescribed Wellbutrin to help in the treatment of his depression. He utilized the proper procedures at Stateville to obtain treatment for his depression.

37. Dr. Yuan, a psychiatrist, saw Mr. Miller during his time at Stateville and refused to continue to prescribe him Wellbutrin or any other medication to aid in the treatment of his depression. Instead, he informed Mr. Miller that "this is a penitentiary, not a hospital." As such, Mr. Miller had no way to treat his depression and endured pain and suffering.

38. In September of 2013, Mr. Miller was prescribed Gabapentin to aid with the pain from the nerve damage he sustained to his right arm. He utilized the proper procedures at Stateville to obtain treatment for his right arm nerve damage.

39. During his incarceration at Stateville, Dr. Schwarz and Dr. Devito refused to prescribe Mr. Miller Gabapentin or any other medication to aid in the treatment of his right arm nerve damage. Mr. Miller had no way to treat his right arm nerve damage because he was denied his medication and continued to suffer from pain in his right arm.

40. Prior to his incarceration at Stateville, Mr. Miller suffered a neck fracture and severe back pain due to his service in the United States Navy. As such, he was deemed to be disabled and required wheelchair assistance for mobility. He was provided with said wheelchair to aid in ambulation at Stateville.

41. On or about December 19, 2014, Nurse Andrea Doe and Nurse Sarah Doe refused to let him use the wheelchair and travel in a van for disabled persons, despite knowledge that it was medically required. The Department did not mandate he have access to his wheelchair or a van for disabled persons. Instead, he was forced to travel by bus for 5 hours while handcuffed and sitting up.

42. Mr. Miller later filed grievances complaining of the prison officials' failure to provide him with a wheelchair. The grievances were denied by prison officials.

43. Mr. Miller has exhausted all administrative remedies connected to this complaint.

## COUNT I
*(8th Amendment-Deliberate Indifference to Serious Medical Needs*
*Against John Doe, M.D., John Doe II, M.D., Hey Yuan, M.D., Diana Schwarz, M.D., Robert Devito, M.D., Andrea Doe, Jennifer Ashanti, Sarah Doe, Sergeant Johnson, and Wexford.)*

44. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-43 as though fully set forth herein.

45. Under the Eighth amendment, prison authorities must provide medical care to prisoners who rely entirely on the prison system for their medical needs.

46. Dr. Devito had personal knowledge of (1) the risks of infection without daily dressing changes to Mr. Miller's abdominal wound; (2) the medical necessity for the abdominal repair surgeries that Mr. Miller required; and (3) Mr. Miller's need for Gabapentin to aid in the treatment of his right arm nerve damage and associated pain, but did not take the required steps to treat Mr. Miller's serious medical conditions.

47. Dr. Devito showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

A) denying him the medical supplies necessary for keeping his wound clean or changing his wound dressing daily;

B) failing to authorize any of the medically necessary abdominal repair surgeries; and

C) failing to prescribe Gabapentin or any other medication to aid with his right arm nerve damage.

48. Dr. Doe had personal knowledge of (1) the risks of infection without daily dressing changes to Mr. Miller's abdominal wound; and (2) the medical necessity for the abdominal repair surgeries that Mr. Miller required, but did not take the required steps to treat Mr. Miller's serious medical conditions.

49. Dr. Doe showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

A) denying him the medical supplies necessary for keeping his wound clean or changing his wound dressing daily; and

B) failing to authorize any of the medically necessary abdominal repair surgeries.

50. Dr. Doe II had personal knowledge of the medical necessity for the abdominal repair surgeries that Mr. Miller required, but did not take the required steps to treat Mr. Miller's serious medical conditions.

51. Dr. Doe II showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

A) failing to authorize any of the medically necessary abdominal repair surgeries required for Mr. Miller.

52. Dr. Schwarz had personal knowledge of (1) the medical necessity for the abdominal repair surgeries that Mr. Miller required; and (2) Mr. Miller's need for Gabapentin to aid in the treatment of his right arm nerve damage and associated pain, but did not take the required steps to treat Mr. Miller's serious medical conditions.

9

53. Dr. Schwarz showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

   A) failing to authorize any of the medically necessary abdominal repair surgeries required by Mr. Miller; and

   B) failing to prescribe Mr. Miller Gabapentin or any other medication to aid with his right arm nerve damage.

54. Dr. Yuan had personal knowledge of Mr. Miller's depression, but did not take the required steps to treat Mr. Miller's serious medical conditions.

55. Dr. Yuan showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

   A) refusing to provide him medication prescribed by outside doctors; and

   B) failing to prescribe any other medication to aid with his depression.

56. Sergeant Johnson had personal knowledge of the risks of infection without daily dressing changes to Mr. Miller's abdominal wound, but did not take the required steps to treat Mr. Miller's serious medical conditions.

57. Sergeant Johnson showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

   A) denying him the medical supplies necessary for keeping his wound clean or changing his wound dressing daily.

58. Nurse Ashanti had personal knowledge of the risks of infection without daily dressing changes to Mr. Miller's abdominal wound, but did not take the required steps to treat Mr. Miller's serious medical conditions.

59. Nurse Ashanti showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

    A) denying him the medical supplies necessary for keeping his wound clean or changing his wound dressing daily.

60. Nurse Andrea Doe had personal knowledge of (1) the risks of infection without daily dressing changes to Mr. Miller's abdominal wound; (2) Mr. Miller's need for access to wheelchair and van transportation services; and (3) Mr. Miller's need for Dilantin to aid in the treatment of his epilepsy, but did not take the required steps to treat Mr. Miller's serious medical conditions.

61. Nurse Andrea Doe showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

    A) denying him the medical supplies necessary for keeping his wound clean or changing his wound dressing daily;

    B) failing to provide Mr. Miller with access to his wheelchair and van transportation services; and

    C) failing to administer epilepsy medication prescribed by a doctor.

62. Nurse Sarah Doe had personal knowledge of (1) Mr. Miller's need for access to wheelchair and van transportation services; and (2) Mr. Miller's need for Dilantin to aid in the treatment of his epilepsy, but did not take the required steps to treat or accommodate Mr. Miller's serious medical conditions.

63. Nurse Sarah Doe showed deliberate indifference to Mr. Miller's serious medical condition by, among others acts and omissions:

    A) failing to provide Mr. Miller with access to his wheelchair and van transportation

11

services; and

B) failing to administer epilepsy medication prescribed by a doctor.

64. Wexford had actual knowledge of (1) the risks of infection without daily dressing changes to Mr. Miller's abdominal wound; (2) the medical necessity for the abdominal repair surgeries that Mr. Miller required; and (3) Mr. Miller's need for Gabapentin to aid in the treatment of his right arm nerve damage and associated pain; (4) Mr. Miller's need for Dilantin to aid in the treatment of his epilepsy; and (5) Mr. Miller's need for medication to aid in the treatment of his depression, but did not take the required steps to treat Mr. Miller's serious medical conditions.

65. Upon information and belief, Wexford was deliberately indifferent to Mr. Miller's serious medical condition by, among other acts and omissions:

A) denying him the medical supplies necessary for keeping his wound clean or approving his wound dressings to be changed daily;

B) failing to authorize any of the medically necessary abdominal repair surgeries;

C) failing to prescribe Gabapentin or any other medication to aid with his right arm nerve damage;

D) refusing to provide him medication prescribed by outside doctors to aid with his depression;

E) failing to prescribe any other medication to aid with his depression;

F) otherwise refusing to approve consultations and follow-up exams with outside experts needed to properly treat Mr. Miller.

**WHEREFORE,** Plaintiff requests that judgment be entered in his favor against each of the defendants jointly and severally and

A. compensatory damages be awarded against defendants Wexford, Dr. Doe, Dr. Doe II, Dr. Devito, Dr. Schwarz, Dr. Yuan, Nurse Sarah Doe, Nurse Andrea Doe, Nurse Ashanti, and Sergeant Johnson;

B. punitive damages against the aforementioned defendants;

C. award attorneys fees and costs pursuant to 42 U.S.C. §1988; and

D. any other such relief that this Court deems just and proper.

## COUNT II
*(Illinois Department of Corrections for Violation of ADA)*

1-43.   Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-43 as though fully set forth herein.

44.   On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

45.   Mr. Miller, at all times relevant to this complaint, was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2), and had a right not to be subjected to discrimination on the basis of his disability by the Department, Wexford or any Wexford staff . 42 U.S.C. § 12132.

46.   Individuals in the custody of the Department such as Mr. Miller are wholly dependent on the Department for accommodation and transportation when they require ambulatory assistance.

47. Under the ADA, 42 U.S.C. § 12132, and 28 C.F.R. § 35.130(a), IDOC must ensure that individuals in its custody are not, on the basis of disability, excluded from participation in or denied the benefits of its services or programs.

48. The Department's refusal to provide Mr. Miller with his wheelchair or arrange for alternative van transportation amounted to a failure to accommodate Mr. Miller's disability.

49. As a result of the Department's wrongful conduct, Mr. Miller was subjected to unnecessary pain and suffering.

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor and against the Department and

A. compensatory damages be awarded against the Department;

B. award attorneys fees and costs pursuant to the ADA; and

C. any other such relief that this Court deems just and proper.

## COUNT III
*(Illinois Department of Corrections for Violation of Rehabilitation Act)*

1-43. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-43 as though fully set forth herein.

44. The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

45. Mr. Miller is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2), and has a right not to be subjected to discrimination on the basis of his disability. 29 U.S.C. § 794(a).

46. The Department receives Federal financial assistance within the meaning of 29 U.S.C. § 794(a).

47. The Department constitutes "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B) and was required to comply with the Rehabilitation Act.

48. The Department's refusal to provide Mr. Miller with his wheelchair amounted to a failure to accommodate Mr. Miller's disability.

49. As a result of the Department's wrongful conduct, Mr. Miller was subjected to unnecessary pain and suffering.

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor and against the Department and

A. compensatory damages be awarded against the Department;

B. award attorneys fees and costs pursuant to the Rehabilitation Act; and

C. any other such relief that this Court deems just and proper.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands trial by jury on all counts.


Respectfully submitted,
Anderson, Rasor & Partners, LLP

_____
Attorney for Aaron Miller

Maureen McGuire
Daniel Hronek
Anderson, Rasor & Partners, LLP
100 S. Wacker Drive
Suite 1000
Chicago, IL  60606
(312) 673-7800

## **CERTIFICATE OF SERVICE**

I certify that on May 12, 2017, I caused to be served a true and correct copy of the foregoing Plaintiff's Second Amended Complaint on all parties by filing a copy of it electronically with the Court's ECF system.

                                              ANDERSON, RASOR & PARTNERS, LLP
                            BY:      /s/ Daniel J. Hronek
                                              Attorney for Aaron Miller

Maureen McGuire
Daniel Hronek
Anderson, Rasor & Partners, LLP
100 S. Wacker Drive
Suite 1000
Chicago, IL  60606
(312) 673-7800